**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO**

| | |
|---|---|
| **PolyTek Surface Coatings, LLC d/b/a Penntek Industrial Coatings,** | **Case No.  22-cv-2570** |
| **Plaintiff,** | **JUDGE:** |
| **v.** | **JURY TRIAL DEMANDED** |
| **Ideal Concrete Coatings, Co.,** | |
| **Defendant.** | |

## COMPLAINT

For its complaint against Defendant Ideal Concrete Coatings, Co. ("Defendant" or "Ideal Concrete"), Plaintiff PolyTek Surface Coatings, LLC d/b/a Penntek Industrial Coatings ("Plaintiff" or "Penntek") alleges and states as follows:

## NATURE OF THE ACTION

1.      This is an action for infringement of Penntek's incontestable federally registered trademark for PENNTEK (Reg. No. 4,886,636) (the "PENNTEK mark"), and common law trademark rights associated with the same, under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114; for infringement of Penntek's trade dress (the "PENNTEK trade dress") under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114; for unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); for deceptive trade practices under the Ohio Deceptive Trade Practices Act, R.C. § 4165 *et seq.*; and for spoliation or destruction of evidence, arising from, among other things, Ideal Concrete's infringing use of the PENNTEK mark and the PENNTEK trade dress.

2.      Specifically, Ideal Concrete's unauthorized use of the PENNTEK mark and PENNTEK trade dress to offer and provide the same exact services and products as Penntek is

likely to cause consumer confusion. Penntek therefore seeks permanent injunctive relief and an award of profits, actual damages, statutory damages, and attorney fees, among other remedies, for Ideal Concrete's unlawful and willful conduct.

## PARTIES

3.      Plaintiff Penntek is a Minnesota limited liability company with its principal place of business at 7850 Lakeville Blvd, Lakeville, MN 55044.

4.      Defendant Ideal Concrete is an Ohio corporation with its principal place of business at 3974 Declaration Dr., Columbus, OH 43230.

## JURISDICTION AND VENUE

5.      This action arises under the Trademark Act of 1946, commonly known as the Lanham Act, 15 U.S.C. § 1051, *et seq.*, the Ohio Deceptive Trade Practices, and Ohio common law.

6.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1338, and 15 U.S.C. § 1121 and supplemental jurisdiction under 28 U.S.C. § 1367.

7.      This Court has personal jurisdiction over Ideal Concrete because it is at home in Ohio; Ideal Concrete's headquarters and principal place of business are in Ohio, and Ideal Concrete is incorporated in Ohio.

8.      Venue is proper in this district under 28 U.S.C. § 1391(b)(1), (2), because a substantial part of the events or omissions giving rise to the claims occurred in this district. Ideal Concrete's use of the PENNTEK mark and PENNTEK trade dress is causing harm in this state and district, and Ideal Concrete is subject to personal jurisdiction here.

## FACTUAL BACKGROUND

**A.**     **Penntek's Business and Authorized Dealer Network**

9.     Since 2010, Penntek has sold and distributed industry-leading, award-winning products in the category of concrete floor coating solutions. It offers a full line of coating solutions, including garage floor coatings; commercial kitchen flooring; industrial concrete flooring; patio coatings; sidewalk coatings; and concrete repair. Below is an example of a garage floor coated with Penntek product:



10.     As an industry leader, Penntek is committed to providing an exceptional level of quality and service. Penntek therefore partners only with dealers who demonstrate the same commitment to quality that Penntek does, so customers choosing Penntek can be sure they are getting access to the best products and services on the market.

11. Consistent with its commitment to excellence and quality, Penntek distributes its manufactured products and licenses the use of its PENNTEK mark through a national "authorized" dealer network.

12. To date, Penntek has licensed its PENNTEK mark to 165 dealers across the United States.

13. To become an authorized Penntek dealer and receive a license to use the PENNTEK mark, dealers are required to attend training on proper installation and care for Penntek products.

14. To remain an authorized Penntek dealer, dealers are required to, among other things: (1) regularly purchase Penntek products; (2) stay current on Penntek products, including attending any new training or re-trainings; (3) remain in good standing financially with Penntek; (4) communicate and cooperate on warranty issues; and (5) represent Penntek and its goodwill in a positive and professional way.

15. Once a dealer is authorized, it is eligible to purchase, sell, and install Penntek products to end users. They are also allowed to represent themselves publicly as an "authorized Dealer of Penntek" and to use the PENNTEK mark on products and services.

16. Penntek provides its authorized dealers with product promotional materials, brochures, photos, and digital images for use in dealer marketing and advertising campaigns. It also provides its dealers with sales kit bags complete with marketing brochures.

17. When Penntek terminates an authorized dealer, the dealer must remove or cease using of all Penntek intellectual property (brochures, logos, etc.) and stop affiliating with Penntek.

B.    **The PENNTEK Mark**

18.    Penntek owns the valid and subsisting U.S. Trademark Registration

No. 4,886,636, registered on the Principal Register in the United States Patent and Trademark

Office, for PENNTEK, which has become incontestable within the meaning of Section 15 of the

Lanham Act, 15 U.S.C. § 1065. Attached as **Exhibit A** is a true and correct copy of the

registration certificate for the PENNTEK mark, which was issued by the United States Patent

and Trademark Office on January 12, 2016, and has a priority date of at least as early as

September 11, 2014.

19.    U.S. Trademark Registration No. 4,886,636 for PENNTEK covers the following

goods and services:

> Class 2: polyurea, epoxy, epoxy resin and urethane floor coatings; epoxy coating
> for use on concrete industrial floors.

20.    Penntek has used the PENNTEK mark in commerce continuously since 2015 for

the products and services for which it is registered. Attached as **Exhibit B** are representative

samples showing Penntek's use of the PENNTEK mark for the registered products and services.

21.    Penntek is also the owner of the common law rights to the PENNTEK mark

through its continuous use in interstate commerce with the above-mentioned services, including

but not limited to concrete floor coatings.

22.    Because of its widespread, continuous, and exclusive use of the PENNTEK mark

to identify its services, Penntek owns valid and subsisting federal statutory and common law

rights in the PENNTEK mark.

23.    The PENNTEK mark is distinctive to both the consuming public and Penntek's

trade.

24. Penntek has expended substantial time, money, and resources marketing, advertising, and promoting its services offered under the PENNTEK mark. Penntek advertises its products and services under the PENNTEK mark locally and nationally through social media, trade shows, word of mouth, referrals, and newspapers.

25. The PENNTEK mark and the products and services offered under it have also received significant unsolicited coverage in various media, including winning the Concrete Construction 2015 Most Innovative Product – Decorative & Concrete Services Award and being featured in the renowned magazine Qualified Remodelers.

26. Penntek offers its products and services under the PENNTEK mark to all ages and genders seeking to become an authorized Penntek dealer. Penntek offers its products and services through its authorized dealer network in at least 47 States.

27. Because of Penntek's considerable research, expenditures, and efforts, the PENNTEK mark has come to signify the high quality and value of the products and services designated by the PENNTEK mark, and acquired incalculable distinction, reputation, and goodwill belonging exclusively to Penntek.

C. **The PENNTEK Trade Dress**

28. Penntek operates and maintains a website under the domain name <https://www.penntekcoatings.com/> (the "Penntek Website"). Internet users can use the Penntek Website to locate a Penntek authorized dealer, discover the history of the company, learn about the different coating solutions available, get an estimate, or become a Penntek authorized dealer.

29. Authorized Penntek dealers have access to a restricted section of the Penntek website, accessible only with validated credentials provided to the dealer by Penntek. When an

authorized dealer enters its login credentials, a Terms of Use agreement appears. To access the restricted section, the authorized dealer must click "I accept" to the Terms of Use. Upon clicking "I accept," the authorized dealer can view a "Resource Center" page with a library of marketing materials. Some of those marketing resources include:

- Brochures;

- Customized dealer marketing;

- Sales tools;

- Script examples;

- Social media tutorials;

- Installation guides, technical data sheets, and warranty information;

- Logos and inlays;

- Print ads; TV ads; trade show materials, and trailer wraps;

- Training videos;

- Photographs of completed projects (garages, patios, pool decks, etc.);

- Dealer meeting presentations; and

- Newsletters.

30.    Penntek has also developed through continuous use a distinctive website trade dress associated with its premier products and services.

31.    The unique combination of shapes, colors, text font, alignment, and accent elements acts as an independent source identifier for Penntek and together make the Penntek website inherently distinctive.

32.    The particular elements of the PENNTEK trade dress are pictured below and include the following:

A.      Orange-based font and box colors with a dark contrasting color;

B.      Prominent display of "Penntek" in forward tilting font;

C.      Solid, dark menu bar on the top of the screen;

D.      "Concrete Coatings" in large, capital letters with small, lowercase letters

underneath;

E.      Pictures of coated floor and finishes;

F.      Orange contact information in upper-right hand corner;

G.      Orange box with fields relating to a quote/estimate; and

H.      Orange interactive box with white text.



33.     The PENNTEK trade dress is inherently distinctive, and as a result of Penntek's widespread and exclusive use of the PENNTEK trade dress, it has acquired secondary meaning in the minds of consumers as identifying and distinguishing Penntek products and services.

34.     Since approximately 2016, Penntek has continuously used the PENNTEK trade dress to distinguish itself as the premier source of concrete coating products and services and has advertised, promoted, and sold its concrete coating products and services under the PENNTEK trade dress extensively throughout the United States and online.

35.     As a result, Penntek's concrete coating products and services have developed a national reputation for premium quality and value. This well-deserved and hard-earned reputation is reflected in the substantial and valuable body of goodwill symbolized by, among other things, the PENNTEK trade dress.

C.     **Ideal Concrete's Infringement of the PENNTEK Mark**

36.     Ideal Concrete is an Ohio company offering concrete coating products and services. Ideal Concrete is in the same industry as Penntek and provides identical products and services to those of Penntek's authorized dealers.

37.     Ideal Concrete is a former Penntek authorized dealer. On or around March 2017, Penntek and Ideal Concrete entered into an oral contract for Ideal Concrete to become Penntek's authorized dealer in the state of Ohio.

38.     In February 2019, in violation of the dealer agreement, Ideal Concrete re-sold Penntek products and warranties to another Ohio company, Elite Concrete, and advised Elite Concrete that it could hold itself as a Penntek authorized dealer. Ideal Concrete's owner falsely stated that he owned part of Elite Concrete's business, which contradicts Elite Concrete's Ohio business filings. Elite Concrete installed at least 53 floors using Penntek products, which it purchased from Ideal Concrete.

9

39.     On or around June 25, 2019, Penntek terminated Ideal Concrete as a Penntek authorized dealer because Ideal Concrete held an extremely high accounts-receivable balance with Penntek; had not purchased Penntek products in several months; signed up a dealer without having the authority to do so; and provided a poor quality of service.

40.     Upon terminating Ideal Concrete as an authorized Penntek dealer and after, Penntek demanded that Ideal Concrete cease and desist using the PENNTEK mark in advertising, in social media, and on Ideal Concrete's website.

41.     After terminating Ideal Concrete, Penntek tapped 3G Concrete Coatings to be an authorized Penntek dealer in the Ohio region.

42.     Despite being terminated as an authorized Penntek dealer, Ideal Concrete has continued using the PENNTEK mark to advertise and identify its concrete coating products and services and continued holding itself out to the consuming public as being a Penntek authorized dealer. For example, and as shown below, at the Columbus Home & Garden trade show on February 27, 2020, Ideal Concrete displayed the PENNTEK mark at Ideal Concrete's booth.



43.     Upon information and belief, Ideal Concrete offers its products and services under

the PENNTEK mark through the same channels of trade through which Penntek and its

authorized dealers offer Penntek products and services, including the internet, social media, and

trade shows.

44.     As of December 17, 2021, Ideal Concrete's website used the PENNTEK mark as

a metatag embedded into the code underlying its website, as shown below:



45. Upon information and belief, Ideal Concrete provides its concrete coating products and services under the PENNTEK mark to the same types of consumers to whom Penntek's authorized dealers provide Penntek concrete coating products and services.

46. Ideal Concrete's unauthorized use of the PENNTEK mark has caused and is likely to cause confusion, mistake, and deception among the relevant consuming public as to the source of origin of Ideal Concrete's concrete coating products and services and has and is likely to deceive the relevant consuming public into mistakenly believing that Ideal Concrete's concrete coating products and services originate from, are associated or affiliated with, or are otherwise authorized by Penntek.

47. Because of Ideal Concrete's continued unauthorized use of the PENNTEK mark, Penntek wrote a letter to 3G Concrete Coatings on July 29, 2020, explaining that 3G Concrete Coatings is an authorized Penntek dealer in the Ohio region, not Ideal Concrete.

48.     Ideal Concrete's unauthorized use of the PENNTEK mark has caused actual confusion in the marketplace. For example, on August 18, 2020, an Ohio consumer sent a letter to 3G Concrete Coatings, asking about Ideal Concrete's affiliation with Penntek.

49.     Ideal Concrete's unauthorized use of the PENNTEK mark has likely caused and is likely to cause future immeasurable harm to the relevant consuming public.

50.     Upon information and belief, Ideal Concrete's use of the PENNTEK mark is trading off the goodwill accumulated by Penntek's use of the PENNTEK mark, causing confusion and deception in the marketplace and diverting potential customers away from Penntek to Ideal Concrete.

51.     Because Ideal Concrete's concrete coating products and services directly compete with Penntek's concrete coating products and services and Penntek's authorized dealers, and because the marks are the same, Ideal Concrete is substantially encroaching on Penntek's business, and consumer confusion is likely.

**D.      Ideal Concrete's Infringement of the PENNTEK trade dress**

52.     As shown below, Ideal Concrete's website uses the same look, feel, and overall impression of the PENNTEK trade dress to trick consumers into believing that Ideal Concrete is sponsored by, authorized by, or associated with Penntek's business.





53.     Ideal Concrete's unauthorized use of the PENNTEK trade dress has caused and is likely to cause confusion, mistake, and deception among the relevant consuming public as to the source of origin of Ideal Concrete's concrete coating products and services and has and is likely to deceive the relevant consuming public into mistakenly believing that Ideal Concrete's concrete coating products and services originate from, are associated or affiliated with, or are otherwise authorized by Penntek.

54.     As shown below, Ideal Concrete's website uses the exact same pictures in the exact same layout with almost verbatim text:



# METALLIC SYSTEM

Add a pop of vibrant color with the 3D marbleized look of our sturdy, yet stylish metallic systems.



Looking to make a big impact for a small price? Then nothing beats the eye-catching appeal and high-end shine of metallic system flooring from Penntek Industrial Coatings! In one quick and affordable installation by our certified flooring experts, you can enjoy a pop of bold color in any residential or commercial space. The 3D marbleized look of our metallic system makes it a five-star complement to any room, including:

- Garage Floors
- Man Caves
- Kitchen Floors
- Restaurant Dining Rooms
- Showrooms
- Convention Centers
- Entertainment Venues
- Boutiques
- Office Lobbies
- Warehouses







Explore Options



Home » Finishes » Metallic System

## Metallic System



Add a pop of vibrant color with the 3D marbleized look of our sturdy, yet stylish metallic systems.

Looking to make a big impact for a small price? Then nothing beats the eye-catching appeal and high-end shine of metallic finishes from Ideal Floor Coatings! In one quick and affordable installation by our certified flooring experts, you can enjoy a pop of bold color in any residential or commercial space. The 3D marbleized look of our metallic system makes it a five-star complement to any room, including:

- Garage Floors
- Man Caves
- Kitchen Floors
- Restaurant Dining Rooms
- Showrooms
- Convention Centers
- Entertainment Venues
- Boutiques
- Office Lobbies
- Warehouse Boutiques
- Office Lobbies
- Warehouses



**$300 OFF** NEW FLOOR
GET **FREE QUOTE** NOW

Full Name

Email

Phone Number

Address | City | Zip

Select your project area:

Care to share any details about your project?

GET A FREE QUOTE





16



# POLYUREA SHOP FLOOR SYSTEM

Our polyurea shop floor systems have all the features you could want in a safe, durable floor.



As the primary area for production and assembly, your shop floor must be able to withstand frequent foot traffic, heavy machinery, and the occasional crash or spill. Since many shop floors are also visited by clients or partners, your floor has to do all this while looking great, too! If your current flooring fails to meet your production needs or aesthetic preferences, get in touch with the flooring pros at Penntek Industrial Coatings.

With our polyurea shop floor system, you'll never have to choose between beauty and strength. Its durable, non-slip finish will protect your personnel while the polyurea material delivers long-lasting protection against all potential sources of damage—from chemical leaks to weighty vehicles and equipment!





17

55.     On top of copying the look and feel of Penntek's website, Ideal Concrete also copied Penntek's product and service brochure, merely replacing Penntek's logo with Ideal Concrete's.

56.     Ideal Concrete's unauthorized use of the PENNTEK trade dress has caused and is likely to cause future immeasurable harm to the relevant consuming public.

57.     Upon information and belief, Ideal Concrete's use of its website is trading off the goodwill accumulated by Penntek's PENNTEK trade dress, causing confusion and deception in the marketplace, and diverting potential customers to Ideal Concrete.

### E.     Penntek's Cease-and-Desist Efforts

58.     Penntek's counsel has tried without success to resolve this dispute. Upon terminating Ideal Concrete as an authorized Penntek dealer on June 25, 2019, Penntek demanded that Ideal Concrete cease and desist using the PENNTEK mark for any purpose and to stop holding itself out as an authorized Penntek dealer.

59.     On January 22, 2021, Penntek's counsel sent a cease-and-desist letter to Ideal Concrete's owner Mr. Holibaugh, objecting to its continued use of the PENNTEK mark despite being terminated as an authorized Penntek dealer. Penntek's counsel again demanded that Ideal Concrete cease and desist using the PENNTEK mark on Ideal Concrete's website, social media, show booths, trailers, and vehicles.

60.     On December 17, 2021, Penntek filed a complaint against Ideal Concrete for trademark and trade dress infringement in United States District Court for the District of Minnesota. On May 5, 2022, the district court dismissed Penntek's complaint for lack of personal jurisdiction.

61.     On information and belief, for a period of time after receiving the cease-and-desist letter, Ideal Concrete did not stop using the PENNTEK mark on Ideal Concrete's website,

social media, show booths, trailers, and vehicles. It also continued using the PENNTEK mark to identify Ideal Concrete's products and services. And it continued holding itself out to consumers as being an authorized Penntek dealer.

62. Ideal Concrete's failure to cease using the PENNTEK mark and PENNTEK trade dress has demonstrated that its infringement is willful and that Ideal Concrete is not willing to cease using the PENNTEK mark or PENNTEK trade dress, and therefore will continue willfully infringing on Penntek's rights.

63. Ideal Concrete's acts are causing, and unless restrained, will continue to cause damage and immediate irreparable harm to Penntek and to its valuable reputation and goodwill with the consuming public for which Penntek has no adequate remedy at law.

## CLAIMS

### COUNT I
### Trademark Infringement
### 15 U.S.C. § 1114(1)(a)

64. Penntek repeats and realleges paragraphs 1 through 63 above.

65. Penntek owns all rights, title, and interest in and to the PENNTEK mark, including all statutory rights that have existed since its September 11, 2014 priority date.

66. Ideal Concrete's unauthorized use in commerce of the PENNTEK mark began long after Penntek first filed and obtained its trademark registration for the PENNTEK mark to identify its products and services and is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Ideal Concrete's concrete coating products and services. Indeed, Ideal Concrete still referred to itself as a Penntek authorized dealer and promoted its products and services using the PENNTEK mark despite receiving a cease-and-desist letter.

67. Ideal Concrete's unauthorized use of the PENNTEK mark is also likely to cause consumers to believe, contrary to fact, that Ideal Concrete's concrete coating products and services are offered, authorized, endorsed, or sponsored by Penntek, or that Ideal Concrete is in some way affiliated with or sponsored by Penntek. Ideal Concrete's conduct therefore constitutes trademark infringement in violation of 15 U.S.C. § 1114(1).

68. Through its unauthorized use of the PENNTEK mark, Ideal Concrete's conduct is causing immediate and irreparable harm and injury to Penntek and trading off of the valuable goodwill that Penntek has developed and will continue to both damage Penntek and confuse the public unless enjoined by this Court.

69. For a period of time after receiving the cease-and-desist letter, Ideal Concrete refused to cease and desist using the PENNTEK mark. Ideal Concrete is on notice of its infringing actions that constitute knowing, deliberate, and willful infringement of the PENNTEK mark, which makes this an exceptional case under 15 U.S.C. § 1117(a).

70. Penntek is entitled to, among other relief, injunctive relief, an award of actual damages, Ideal Concrete's profits, enhanced damages and profits, reasonable attorney's fees, and costs of this action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

### COUNT II
### Trade Dress Infringement and False Designation of Origin
### 15 U.S.C. § 1125(a)(1)(A)

71. Penntek repeats and realleges paragraphs 1 through 70 above.

72. The PENNTEK trade dress is comprised of the discrete features listed in paragraph 28 above, is inherently distinctive, and has acquired secondary meaning in the minds of consumers.

73.     The PENNTEK trade dress, comprised of an original combination of features recognized by consumers as indicators of source of Penntek products and services, is nonfunctional.

74.     The PENNTEK trade dress is therefore protected under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

75.     Since at least as early as 2016, Penntek has used its inherently distinctive PENNTEK trade dress in interstate commerce in connection with the advertising, offer for sale, and sale of its concrete coating products and services.

76.     Ideal Concrete's intentional adoption of the Ideal Concrete website that is so similar to the PENNTEK trade dress has confused the public into believing that Ideal Concrete's products and services are the same as Penntek's products and services or that it is authorized, sponsored, or approved by or affiliated with Penntek.

77.     Ideal Concrete's unauthorized use in commerce of the Ideal Concrete website that is confusingly similar to the PENNTEK trade dress constitutes infringement of Penntek's rights in violation of 15 U.S.C. § 1125(a).

78.     As a direct and proximate result of Ideal Concrete's actions described above, Penntek has suffered, and will continue to suffer, irreparable injury to its revenue, business, reputation, and goodwill, unless and until the Court enjoins Ideal Concrete's actions.

79.     Penntek's remedy at law is not adequate to compensate Penntek for its injuries inflicted from Ideal Concrete's adoption and use of the Ideal Concrete website. Penntek is therefore entitled to entry of injunctive relief under 15 U.S.C. § 1116.

80.     Ideal Concrete has caused Penntek to suffer monetary damages in an amount to be proven at trial, and Penntek is entitled to recovery of Ideal Concrete's profits attributable to Ideal Concrete's use of the Ideal Concrete website in commerce.

81.     Because Ideal Concrete selected and used the Ideal Concrete website in an effort to trade on Penntek's goodwill, Ideal Concrete's infringement is willful, and Penntek is entitled to treble damages under 15 U.S.C. § 1117.

## COUNT III
### Unfair Competition
### 15 U.S.C. § 1125(a)(1)(A)

82.     Penntek repeats and realleges paragraphs 1 through 81 above.

83.     Under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A):

Any person who, on or in connection with any . . . services, . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

84.     Ideal Concrete's unauthorized use in commerce of the PENNTEK mark and PENNTEK trade dress is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Ideal Concrete's products and services, and is likely to cause consumers to believe, contrary to fact, that Ideal Concrete's products and services are sold, authorized, endorsed, or sponsored by Penntek, or that Ideal Concrete is in some way affiliated with or sponsored by Penntek.

85.     Ideal Concrete's unauthorized use in commerce of the PENNTEK mark and PENNTEK trade dress constitutes use of a false designation of origin and misleading description and representation of fact.

86.     Ideal Concrete has refused to cease using the PENNTEK mark and PENNTEK trade dress despite Penntek's request that it do so. Ideal Concrete's conduct is therefore willful and is intended to and is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Ideal Concrete with Penntek.

87.     Ideal Concrete's conduct constitutes unfair competition in violation of 15 U.S.C. § 1125(a).

88.     Ideal Concrete's conduct is causing immediate and irreparable harm and injury to Penntek, and to its goodwill and reputation, and will continue to both damage Penntek and confuse the public unless enjoined by this court. Penntek has no adequate remedy at law.

89.     Under 15 U.S.C. §§ 1116, 1117, Penntek is entitled to, among other relief, injunctive relief, an award of actual damages, Ideal Concrete's profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action together with prejudgment and post-judgment interest.

## COUNT IV
## Ohio Deceptive Trade Practices
## R.C. § 4165 *et seq.*

90.     Penntek repeats and realleges paragraphs 1 through 89 above.

91.     Penntek owns all rights, title, and interest in and to its PENNTEK marks, including but not limited to all common law rights in such marks due to Penntek's first use of the PENNTEK marks in the State of Ohio.

92.     This Claim is based on unfair competition and deceptive trade practices in violation of the Ohio Deceptive Trade Practices Act (R.C. § 4165 *et seq*.).

93.     Penntek has used and is currently using the PENNTEK marks to identify its services to distinguish them from the services of others.

94.     Ideal Concrete's unauthorized use of marks confusingly similar to the PENNTEK marks demonstrates Ideal Concrete's willful or intentional intent to pass off its services as those of the Penntek's in violation of R.C. § 4165.02(A)(1)-(4) and R.C. § 4165.03(B).

95.     Ideal Concrete's unauthorized use of marks confusingly similar to the PENNTEK marks for its floor coating services is likely to cause confusion, mistake, or deception as to the source, affiliation, connection, or association of Ideal Concrete's services with Penntek, or as to the sponsorship, approval, or affiliation of Ideal Concrete with Penntek, in addition to engaging in other conduct that similarly creates a likelihood of confusion or misunderstanding in violation of R.C. § 4165.02(A)(1)-(4).

96.     Ideal Concrete adopted and used marks confusingly similar to the PENNTEK marks with actual or constructive notice or knowledge of Penntek's superior exclusive rights in the PENNTEK marks.

97.     Ideal Concrete has refused to cease the confusingly similar and infringing use of the PENNTEK marks despite Penntek's request that it does so. Ideal Concrete's actions therefore constitute knowing, deliberate, and willful infringement of Penntek's the PENNTEK marks and make this an exceptional case under R.C. § 4165.03(B).

98.     Because of Ideal Concrete's knowing, deliberate, and willful infringement of marks confusingly similar to Penntek's the PENNTEK marks, Penntek has been irreparably harmed. Penntek has no adequate remedy at law.

99.     Ideal Concrete will continue such infringement unless enjoined by this Court.

100.    Penntek is entitled to, among other relief, an award of actual damages, reasonable attorneys' fees, costs of the action, and injunctive relief under the Ohio Deceptive Trade Practices Act (R.C. § 4165 *et seq.*), together with prejudgment and post-judgement interest.

**COUNT V**
**Spoliation or Destruction of Evidence**

101.    Penntek repeats and realleges paragraphs 1 through 100 above.

102.    The December 17, 2021 complaint alleged, among other things, that Ideal Concrete's website uses the same look and feel of Penntek's website and that Ideal Concrete embedded Penntek's trademark as metatags within Ideal Concrete's website.

103.    Shortly after filing the complaint, Penntek's counsel noticed that Ideal Concrete removed some of the content on its website, including on information and belief the "Penntek" metatags within Ideal Concrete's website, which were at the core of Penntek's infringement claims.

104.    On January 28, 2022, Penntek's counsel sent a spoliation letter to Ideal Concrete's counsel of record in the Minnesota litigation, advising Ideal Concrete of its preservation obligations and requesting confirmation that the code and metadata on Ideal Concrete's website had been preserved. The January 28, 2022 letter is attached as **<u>Exhibit C</u>**.

105.    On February 17, 2022, Ideal Concrete's counsel of record in the Minnesota litigation sent an email to Penntek's counsel of record claiming that they were "investigating the issues raised in [the January 28, 2022] letter" and that they would "respond when [they] have completed [their] investigation." After, Ideal Concrete's counsel never responded or followed up.

106.    On information and belief, Ideal Concrete's counsel either never completed the investigation or advised Penntek's counsel of the results of that investigation.

107.     On information and belief, Ideal Concrete intentionally interfered with or destroyed, among other things, (1) the metadata that included Penntek's trademark and (2) the code powering its website.

108.     On information and belief, Ideal Concrete intentionally interfered with or destroyed the metadata that included Penntek's trademark and the code powering its website to disrupt Penntek's claims regarding infringement of Penntek's trademark and trade dress.

109.     As a direct and proximate result of Ideal Concrete's spoliation or destruction of evidence, Penntek has suffered damages in an amount not yet determined but in excess of $75,000, including reasonable attorney fees, costs, prejudgment interest, and any other damages and injunctive relief to which Penntek is entitled in law or in equity.

## JURY DEMAND

Penntek demands a jury trial on all matters and issues triable by jury.

## PRAYER FOR RELIEF

WHEREFORE, Penntek respectfully requests that this Court enter a Judgment and Order in its favor and against Ideal Concrete as follows:

A.     That Ideal Concrete has violated Section 32 of the Lanham Act, Section 43(a) of the Lanham Act.

B.     That Ideal Concrete has violated the Ohio Deceptive Trade Practices Act.

C.     That Ideal Concrete has interfered with or destroyed evidence.

D.     Granting an injunction permanently enjoining Ideal Concrete, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and all those in active concert and participation with any of the foregoing persons and entities who receive actual notice of the Court's order by personal service or otherwise from:

i.    engaging in any activity that infringes the PENNTEK mark or PENNTEK trade dress;

ii.    injuring Penntek's business reputation and goodwill associated with the PENNTEK mark or PENNTEK trade dress and from otherwise unfairly competing, directly or indirectly, with Penntek;

iii.    making or displaying any statement, representation, or depiction that is likely to lead the public or the trade to believe that (i) Ideal Concrete's concrete coating products and services are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Penntek or (ii) Penntek's services are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Ideal Concrete;

iv.    registering or applying to register any trademark, service mark, domain name, trade name, or other source identifier or symbol of origin consisting of or incorporating the PENNTEK mark or PENNTEK trade dress or any other mark that infringes or is likely to be confused with the PENNTEK mark or PENNTEK trade dress, or any services of Penntek, or Penntek as their source;

v.    aiding, assisting, or abetting any other individual or entity in doing any act prohibited by sub-paragraphs (i) through (iv).

E.    Granting such other and further relief as the Court may deem proper to prevent the public from deriving the false impression that any goods or services manufactured, sold, distributed, licensed, marketed, advertised, promoted, or otherwise offered or circulated by Ideal Concrete are in any way approved, endorsed, licensed, sponsored, authorized, or franchised by or

associated, affiliated, or otherwise connected with Penntek or constitute or are connected with Penntek's services.

F.      Directing Ideal Concrete to immediately cease all display, distribution, promotion, sale, offer for sale and/or use of any and all materials, including brochures and websites, that feature or bear any designation or mark comprising of or incorporating PENNTEK as branding or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of the PENNTEK mark or PENNTEK trade dress, and to immediately remove them from public access and view.

G.      Awarding Penntek an amount up to three times the amount of its actual damages, in accordance with Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a).

H.      Directing that Ideal Concrete account to and pay over to Penntek all profits realized by its wrongful acts in accordance with Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a), enhanced as appropriate to compensate Penntek for the damages caused by Ideal Concrete's unauthorized acts.

I.      Awarding Penntek punitive and exemplary damages as the Court finds appropriate to deter any future willful infringement.

J.      Declaring that this is an exceptional case under Section 35(a) of the Lanham Act and awarding Penntek its costs and reasonable attorney's fees under 15 U.S.C. § 1117(a) or that Penntek is entitled to its costs and reasonable attorney's fees under R.C. § 4165 *et seq.*

K.      Awarding Penntek interest, including prejudgment and post-judgment interest, on the foregoing sums.

L.      Awarding such other and further relief as the Court deems just and proper.

Dated: June 22, 2022                    **TAFT STETTINIUS & HOLLISTER LLP**

*/s/ R. Eric Gaum*
R. Eric Gaum (0066573)
egaum@taftlaw.com
TAFT STETTINIUS & HOLLISTER LLP
200 Public Square, Suite 3500
Cleveland, OH 44114-2302
P: 216.241.2838 | F: 216.241.3707
***Trial Attorney for Plaintiff***

James D. Abrams (0075968)
jabrams@taftlaw.com
TAFT STETTINIUS & HOLLISTER LLP
65 East State Street, Suite 1000
Columbus, OH 43215
P: 614.221.2838 | F: 614.221.2007

***Attorneys for Plaintiff***